Filed 7/22/24  P. v. Inzunza CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARIA MICHELLE INZUNZA,<br><br>    Defendant and Appellant. | B335413<br><br>(Los Angeles County<br>Super. Ct. No. LA084400-02) |

APPEAL from an order of the Superior Court of Los Angeles County, Michael Jesic, Judge.  Affirmed.

Juliana Drous, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

Pursuant to *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*), we review an order denying defendant Maria Inzunza's petition for resentencing brought under Penal Code[1] section 1172.6.  We affirm.

## PROCEDURAL BACKGROUND

On June 8, 2017, the People filed an Information charging Maria Inzunza and co-defendant Rosa Manuela Barrientos with the murder of Mohammed Kalam and attempted second degree robbery.  The Information also alleged a special circumstance that the murder was committed while the defendants were engaged in the attempted commission of robbery.  (§§ 187, subd. (a), 211, 213, 667, subd. (a)(1), 190.2, subd. (a)(17).) Finally, as to Inzunza, the Information alleged that a principal in the offense was armed with a handgun within the meaning of section 12022, subdivision (a)(1).

On August 31, 2018, a jury found Inzunza guilty of first degree murder and attempted robbery and found true the special circumstance and firearm enhancement.  On August 22, 2019, the trial court sentenced Inzunza to three years plus life imprisonment without the possibility of parole.

 On direct appeal, we remanded Inzunza's sentence on the attempted robbery conviction with directions to vacate the consecutive term imposed on that offense and stay the sentence pursuant to section 654.  (*People v. Inzunza* (June 9, 2021, B301380) [nonpub. opn.].)

On November 9, 2021, Inzunza filed a petition for resentencing pursuant to former section 1170.95, renumbered on

---

[1]     Statutory references are to the Penal Code.

2

June 30, 2022 as section 1172.6.  The trial court appointed counsel for Inzunza, and, "in an abundance of caution," found Inzunza had established a prima facie case for relief, and set the matter for an evidentiary hearing pursuant to section 1172.6, subdivision (d)(3).  On October 26, 2023, the trial court held a hearing.  It read and considered the briefing of both sides.  Without objection from any party, the court relied on the trial transcript, the surveillance video of the murder, and its own memory of what occurred at trial as the trial judge presided at the trial as well as at the hearing on the 1172.6 petition.

The trial court found: "Ms. Inzunza was not the actual shooter in this case.  I think that's clear from the testimony and from the video.  Thus, her conviction would have to be based on being a major participant in the robbery or attempted robbery of the convenience store and Mr. Mohammed Kalam.  And the video is honestly the entire case.  The video was very clear as to what happened.  That it was Ms. Inzunza who handed the note demanding that Mr. Kalam, I believe, give over money.  And Mr. Kalam, for whatever reason, . . . handed the note back and was not going to comply.  And Ms. Inzunza handed him back the note. They went back and forth.  Eventually Ms. Inzunza actually reads him the note, and he turns around to get the phone to call—presumably to call 911. [¶] And Ms. Barrientos raises her gun and pulls the trigger, and the gun does not fire.  She manipulates the gun.  Tries again.  And it doesn't fire again.  I can't remember how many exact times.  You did a good job at reciting it here in your brief.  But I believe it was 2 or 3 times that Ms. Barrientos had to manipulate the gun.  Finally got it to work.  [¶] The entire time Ms. Inzunza was standing next to her. At any point during that time Ms. Inzunza could have stopped

3

the incident. Told Ms. Barrientos no more. But stood there and allowed Ms. Barrientos or stood by as Ms. Barrientos shot the victim in the head killing him. [¶] There is—the court does find beyond a reasonable doubt that the petitioner here, Ms. Inzunza, was a major participant and acted with reckless disregard. She was definitely part of this robbery from the beginning to the end. She's the [one] who handed the note. She's the [one] who actually read the note to the victim. And so the petition based on that is denied." Inzunza timely appealed.

On March 27, 2024, we appointed counsel to represent Inzunza on appeal. On April 25, 2024, counsel filed a no issue brief pursuant to *People v. Delgadillo*. Counsel advised us appellant was told she may file her own supplemental brief within 30 days. Counsel sent Inzunza transcripts of the record on appeal as well as a copy of the brief.

On April 26, 2024, this court sent Inzunza notice that a brief raising no issues had been filed on her behalf. We advised her she had 30 days within which to submit a supplemental brief or letter stating any issues she believes we should consider. We also advised her that if she did not file a supplemental brief, the appeal may be dismissed as abandoned.

On June 5, 2024, we received Inzunza's supplemental brief in which she argues no substantial evidence supports the trial court's conclusion that she was a major participant in the robbery who acted with reckless indifference to human life.

4

## FACTUAL BACKGROUND[2]

Around midnight on September 24, 2016, the Los Angeles Police Department responded to A&D Liquor Mart in North Hollywood where store clerk Mohammed Kalam had been shot and killed during what appeared to be a robbery attempt. The police located a "demand note" on the ground at the entrance of the market which said, "Real simple. Give us the fucking money from the register or we will fucking kill you." The store clerk, Mohammed Kalam, was found lying on the ground behind the counter, dead from a single gunshot wound to his face.

The surveillance video from A&D Liquor Mart was shown to the jury during the trial. The video shows two women approach Kalam who is behind the counter. One of the women, later identified as Inzunza, wore black clothing with a Chicago Bulls baseball cap. The other, identified as Barrientos, was in a striped hoodie. The one dressed in black handed Kalam a note which Kalam tossed back. This repeated several times. The one dressed in black then read the note to Kalam. The woman in the hoodie pulled out a handgun and pointed it at Kalam. As Kalam moved towards a cordless phone, the woman in the hoodie tracked him with her gun and pulled the trigger but the gun jammed. She tried to unjam the gun and pulled the trigger again, but the gun did not fire. After again attempting to unjam

---

[2]    The trial transcripts and exhibits were not originally part of the record on appeal. Appellant moved to augment the record on appeal with the surveillance video from A&D Liquor Mart (People's Exhibit 2). Appellant also asked us to take judicial notice of the trial transcripts which were part of the record in the prior appeal (B301380). We granted both requests.

the gun, she raised the gun and pointed at Kalam's face.  She pulled the trigger.  This time the gun fired, dropping Kalam to the ground.  The woman in black with the baseball cap reached over to the register but was unable to open it.  Both women are captured running out of the store.

The women ran to a car parked on the street nearby.  Their friend, Cynthia Aguirre, was in the driver's seat with the emergency flashers on, waiting for them to return from the liquor store.  She saw them run from the store back to the car.  Inzunza told Aguirre that Barrientos had gotten into a fight with the store clerk.  The three then drove off.

The demand note was dusted for fingerprints.  Prints on the note matched both defendants.

Around 5:30 p.m. on the day of the robbery, Barrientos and Inzunza exchanged text messages about using "the strap."  Specifically, one text message was: "Well, R we gonna use the strap?"  A "strap" is vernacular for a firearm.

## DISCUSSION

A.    *Petition for Resentencing*

Senate Bill No. 1437 (2017–2018 Reg. Sess.) limited the scope of the felony murder rule.  (*People v. Lewis* (2021) 11 Cal.5th 952, 957) (*Lewis*).)  Petitions for resentencing carry out the intent of Senate Bill No. 1437, which was "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Stats. 2018, ch. 1015, § 1, subd. (f); *Lewis*, at p. 967.)  Hence, petitions under section 1172.6 address convictions where a defendant was not the shooter but was held

6

vicariously liable on one of several theories of liability identified in the statute. Resentencing is available under the new law if the defendant neither killed nor intended to kill and was not " 'a major participant in the underlying felony [who] acted with reckless indifference to human life, as described in subdivision (d) of [Penal Code] section 190.2.' " (*People v. Strong* (2022) 13 Cal.5th 698, 703 (*Strong*).)

At the evidentiary hearing, the superior court acts as an independent fact finder and the prosecution bears the burden of proving beyond a reasonable doubt that the petitioner is guilty of murder or attempted murder notwithstanding changes made to sections 188 and 189. (*People v. Wilson* (2023) 14 Cal.5th 839, 869.) The parties may offer new or additional evidence and the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony. (*Ibid; People v. Hill* (2024) 100 Cal.App.5th 1055, 1065–1066 (*Hill*).)

We review the superior court's factual findings after an evidentiary hearing for substantial evidence and the court's application of the law to those facts de novo. (*People v. Wilson* (2023) 90 Cal.App.5th 903, 916.) We consider the whole record in the light most favorable to the superior court's findings and we presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. (*People v. Rivera* (2019) 7 Cal.5th 306, 323, 331.) We ask "whether substantial evidence, defined as reasonable and credible evidence of solid value, has been disclosed, permitting the trier of fact to find guilt beyond a reasonable doubt." (*People v. Vargas* (2020) 9 Cal.5th 793, 820.) If the trier of fact's determination is supported, reversal is not warranted, even where the

7

circumstances might also reasonably be reconciled with a contrary finding.  (*Ibid*.)

Section 189, subdivision (e) allows a conviction based on felony murder for a "participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which death occurs" if the person was (1) the actual killer, (2) a direct aider and abettor who acted with the intent to kill, or (3) a major participant in the underlying felony who acted with reckless indifference to human life.  (§ 189, subd. (e)(1)-(3).)  Currently section 189, subdivision (a) includes robbery among the offenses upon which a felony-murder conviction may be based.  (*Hill, supra*, 100 Cal.App.5th at p. 1067.)

B.      *Banks* and *Clark*

What it means to be a "major participant" who acts with "reckless indifference to human life" is governed by factors set out by our Supreme Court in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).[3] Factors to consider in deciding whether a defendant was a "major participant" in the underlying robbery include: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths?  What role did the defendant have in supplying or using lethal weapons?  What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other

---

[3]     Inzunza was tried after *Banks* and *Clark* were decided, but the People conceded in the trial court that the jury was not properly instructed on the new factors.  For that reason, the trial court treated this as a pre-*Banks* and *Clark* case.  We do the same.

participants?  Was the defendant present at the scene of the killing in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?  What did the defendant do after lethal force was used?" (*Banks,* at p. 803, fn. omitted.)  None of these considerations is dispositive.  Rather, all may be weighed in determining the ultimate question: whether the defendant's participation in criminal activities known to carry a grave risk of death was sufficiently significant to be considered major.  (*Banks,* at p. 803*; see also Strong, supra,* 13 Cal.5th at p. 706*.)*

In *Clark*, the Court analyzed the second component, "reckless indifference," and concluded that it "encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Clark, supra,* 63 Cal.4th at p. 617.)  Reckless indifference has a subjective and an objective element.  As to the subjective element, the defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed and he or she must consciously disregard the significant risk of death his or her actions create.  (*Banks, supra*, 61 Cal.4th at p. 801; *Clark*, at p. 617.)  As to the objective element, the risk of death must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him or her, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.  (*Clark*, at p. 617; *In re Scoggins* (2020) 9 Cal.5th 667, 677.)

Factors to consider include use or awareness of the presence of a weapon or weapons, physical presence at the scene and opportunity to restrain confederates or aid victims, the duration of the crime, knowledge of any threat the confederates might represent, and efforts taken to minimize risks. (*Clark, supra*, 63 Cal.4th at pp. 618–623.) This list of factors overlaps with those identified in connection with the major participation inquiry in *Banks*. (*Strong, supra*, 13 Cal.5th at p. 706.) No one consideration is necessary nor is any one of them necessarily sufficient. (*Clark,* at p. 618.)

## C.   *Analysis*

Here, the evidence was certainly sufficient to establish Inzunza as a major participant in the robbery who acted with reckless indifferent to human life. As to her participation in the robbery, Inzunza was part of the planning as shown by the text messages she and Barrientos exchanged on the evening of the robbery about using the "strap." Although Inzunza did not fire the weapon, she read the note to the victim telling him he would be shot if he did not comply with their demands; her threat of violence played a role in the use of the weapon. Inzunza was the person who handed the robbery note to the victim several times as the victim kept returning it to her. She then actually read the note to him. Her initiation of the robbery put her at the forefront of the robbery attempt. She was physically present during the shooting and took no steps to restrain the shooter, when she had the opportunity to do so, or to assist the victim after the shooting. Instead, she tried to complete the robbery by reaching over the counter and trying to open the drawer of the cash register as the victim lay shot and helpless on the floor. These facts establish her as a major participant in the robbery.

10

As to reckless indifference, as the trial court pointed out, Inzunza was standing next to her co-defendant who pointed the gun at the victim and pulled the trigger multiple times when the gun jammed.  Inzunza did nothing to put a stop to the violence.  Although the robbery itself was brief in time, it was long enough for Barrientos to try three times to unjam the gun.  The problems with the gun allowed both of them time to pull back and leave the store, had they decided to do so.  Inzunza chose to proceed with the robbery.

Indeed, Inzunza did nothing to restrain the shooter and nothing to assist the victim after he was shot, instead trying to complete the robbery and then fleeing the scene.  She was not unaware that her co-defendant had a firearm and was willing to use it as they had texted before the offense about whether to bring the firearm.  If we assume Inzunza was unaware that Barrientos had actually brought the firearm, she became aware as soon as she read the note to the victim and saw Barrientos pull out the gun and aim it point black at the victim's face.  These facts establish reckless indifference to human life.

We decline to exercise our discretion to independently review the record.  (*People v. Delgadillo, supra*, 14 Cal.5th at p. 226.)

## DISPOSITION

The order denying the petition for resentencing is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


         STRATTON, P. J.

We concur:


GRIMES, J.


VIRAMONTES, J.